**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| ——————————————— X | |
| Alyce R. Payne, William French, Karen Michaels, and Lorna Harris, on Behalf of Themselves and all Others Similarly Situated, | Civil Action No. |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| vs. | <u>Jury Trial Demanded</u> |
| APPLE INC. and AT&T MOBILITY LLC, | |
| Defendants. | |
| ——————————————— X | |

Plaintiffs Alyce R. Payne, William French, Karen Michaels, and Lorna Harris ("Plaintiffs") bring this action on behalf of themselves and all other consumers similarly situated, and allege upon information and belief, formed after a reasonable inquiry under the circumstances, except as to those allegations which pertain to the named Plaintiffs (which are alleged on personal knowledge), as follows:

**<u>NATURE OF THE ACTION</u>**

1.      This is a class action brought against Defendants Apple Inc. ("Apple") and AT&T Mobility LLC ("AT&T") (collectively, "Defendants") to recover for the harm caused by Defendants' deceptive, improper or unlawful conduct in its design, marketing, manufacturing, distribution, and sale of Apple's iPhone 3G series of mobile phones.  The iPhone 3G series mobile phones include the series manufactured and sold by Defendants as the 3G-8GB iPhone and the 3G-16GB iPhone (collectively, the "iPhones").  The 3G iPhones do not and cannot adequately perform due to the insufficient 3G bandwidths and AT&T infrastructure.  Additionally, the iPhones have had well-known and documented issues regarding the premature

1

Dockets.Justia.com

"wear-and-tear" of the iPhones' housing, including the formation of hairline cracks in the iPhones' casing. Defendants' conduct violates Texas statutory and common law, including Texas consumer protection statutes, negligent misrepresentation, unjust enrichment, and breaches of express and implied warranties.

2.     Plaintiffs and other consumers purchased defective iPhones designed, marketed, manufactured, distributed, and sold by Defendants (the "Class"). Based upon information and belief the 3G iPhones demand too much power from the 3G bandwidths and the AT&T infrastructure is insufficient to handle this overwhelming 3G signal based on the high volume of 3G iPhones it and Apple have sold.

3.     In addition, consumers have experienced the formation of hairline cracks in the housing of their iPhones. Based upon information and belief, the hairline cracks appear around the camera, near the volume rocker, and other areas on the iPhones' housing.

4.     Based upon Defendants' violations of Texas Business and Commerce Code sections 17.12 and 17.46 and/or the harm caused to Plaintiffs and members of the Class as a result of Defendants' improper conduct, Plaintiffs and members of the Class seek restitutionary and injunctive relief, including: (a) compensatory, punitive and statutory damages; (b) disgorgement and restitution of Defendants' ill-gotten gains for unfair business practices, untrue and misleading advertising; and (c) disclosures and/or disclaimers on the outside of its boxes or advertising material.

## PARTIES

5.     Plaintiffs are, and at all relevant times have been, residents of Collin (Plaintiff Payne), Smith (Plaintiffs Harris and Michaels) and Kaufman (Plaintiff French) Counties, Texas. Plaintiffs purchased iPhones, which were advertised, distributed, and/or sold by Apple, and

signed an agreement for monthly service provided by AT&T. Moreover, Plaintiffs have suffered injury in fact and have lost money and/or property as a result of Defendants' acts, *i.e.*, their engagement in false and misleading advertising concerning the speed and performance of the iPhones. Furthermore, Plaintiffs have suffered injury in fact due to Apple's defective housing used for the iPhones resulting in the formation of hairline cracks.

6.     Plaintiffs either directly or indirectly relied upon, *inter alia*, the representations, advertising and other promotional materials which were prepared and approved by Defendants and their agents and disseminated on the face of the iPhones' containers, through local and national advertising media, including Defendants' respective internet websites, containing the misrepresentations and/or omissions alleged hereinafter.

7.     Plaintiffs also relied upon the representations of Defendants in researching which product to purchase. Specifically, Plaintiffs took into account the way Defendants represented the speed and performance of the 3G network and the iPhones to Plaintiffs, the proposed Class and the general public.

8.     Defendant Apple is a California corporation and maintains its principal executive offices at 1 Infinite Loop, Cupertino, California 95014. Apple designs, manufactures, and sells personal computers, portable digital music players, and mobile communication devices, as well as related software, services, peripherals, and networking solutions worldwide. Apple also has significant contacts within Collin, Smith and Kaufman Counties, Texas, and the activities complained of herein occurred, at least in part, in Collin, Smith and Kaufman Counties, Texas. According to Apple's website, its products can be purchased directly from Apple through its website, at "Apple's own retail store locations around the country" or at "thousands of Apple authorized resellers."

9.     Defendant AT&T is a Delaware limited liability company and maintains its principal executive offices at 5565 Glenridge Connector, Atlanta, Georgia 30342.  AT&T is a wholly-owned subsidiary of AT&T Inc.   AT&T provides telecommunications services to consumers and businesses in the United States and internationally.  It provides wireless services, including local wireless communications, long-distance, and roaming services with various postpaid and prepaid service plans.  AT&T is licensed to do, and is doing, business in Texas and throughout the United States.  It transacts business in Texas, and at all relevant times designed, manufactured, promoted, marketed, distributed, and/or sold service plans that are the subjects of this complaint, throughout Texas and the United States.  AT&T also has significant contacts with Texas and the activities complained of herein occurred, at least in part in Collin, Smith and Kaufman Counties.

10.     At all relevant times, Apple and AT&T made and continue to make misrepresentations in the promoting, advertising, and/or sale of its 3G iPhone and service plans described below.  According to an August 13, 2008 news article published by the *Associated Press*, for example, the iPhones exhibit "spotty wireless broadband connectivity… most likely resulted from a hardware problem introduced during mass production."  The same article recounted how "Ny Teknik, Sweden's foremost engineering weekly, obtained a report on tests conducted by unnamed experts that showed some handsets' sensitivity to third-generation network signals is well below the level specified in the 3G standard."

11.     At all relevant times, the iPhones were defective and would not provide its inherent functionality and/or the functionality expected by consumers.  This has been evidenced by the increasingly common problem suffered by Plaintiffs and thousands of members of the proposed Class.

**JURISDICTION AND VENUE**

12.     The Court has original jurisdiction over this matter, pursuant to 28 U.S.C.S. §1332(d), in that the matter in controversy exceeds $5 million, exclusive of interest and costs, and is a class action of more than 100 potential class members in which Plaintiffs are citizens of Texas while at least one defendant is a citizen of a different state.

13.     Venue properly lies in this district pursuant to 28 U.S.C. §1391(a), because one or more of the Plaintiffs reside, and Defendant has transacted substantial business within the Eastern District of Texas within the meaning of 28 U.S.C. §1391(a) as defined in 28 U.S.C. §1391(c), and because a substantial part of the events giving rise to the claims alleged herein occurred in the Eastern District of Texas.

**SUBSTANTIVE ALLEGATIONS**

14.     In or around the summer of 2008, Apple and AT&T began marketing the iPhones. The iPhones' launch was preceded and followed by an aggressive marketing campaign, including radio, television, internet, and print advertisements.

***The iPhones and the Overloaded 3G Network***

15.     In their advertising campaign, Defendants made numerous express warranties regarding the quality and compatibility of the 3G network protocol or standard included in the iPhones.  In fact, Apple's own website touts the iPhones as being "Twice as fast.  Half the Price." as compared to prior models.  Apple's website also boasts that e-mail attachments and web pages load twice as fast on 3G networks as on 2G EDGE networks.

16.     In conjunction with each sale, Defendants marketed, advertised and warranted that the iPhones were fit for the ordinary use of receiving phone calls, a GPS device, internet browsing, e-mail, and other data streams or sources at 3G speeds.

17.     Apple manufactured, marketed, advertised, warranted and sold, either directly or through its authorized distribution channels (including through AT&T), the iPhones.

18.     Apple manufactured and distributed the iPhones with the intention its consumers would purchase, regardless of place of purchase, or the location where customers actually use them.  The iPhones entered the stream of commerce, were distributed, and were ultimately put up for sale, and sold to Plaintiffs and other consumers in Collin, Smith and Kaufman Counties, as well as purchasers throughout the State of Texas.

19.     Due to the overloaded 3G network, it is quite common for iPhone users to only be on the 3G network for a few minutes before being bumped to the slower EDGE network despite being in geographical areas allegedly rich with 3G network coverage.

20.     Furthermore, AT&T has knowingly misrepresented the performance of its 3G network.  AT&T spokesman, Brad Mays was quoted in a July 23, 2008 blog post by Brian X. Chen on *Wired.com's Gadget Lab* blog, as saying the iPhones are "performing great."  Mr. Mays has further stated, "[c]ustomers in 300 major metro areas in the United States and 350 by the end of the year are experiencing the fast network connectivity that our 3-G network provides."  Mays concluded by stating, "[AT&T has] anticipated the influx of users and have reported that the strength of the network can, does and will continue to support that."

21.     To date, Apple has issued three firmware updates for the iPhones.  In July 2008, Apple released version 2.0 of OS X iPhone software for the iPhones and the iPod Touch which included new features like access to Apples App Store, increased security, and enterprise capabilities.  According to an August 20, 2008 article by Marin Perez that appeared in *InformationWeek*, message boards filled up quickly that the updated software led to crashes, "bricked" handsets, slower applications, a lag in the virtual keyboard, internet connection issues,

and spotty call reception.  Subsequently, Apple released version 2.02 of OS X iPhone software for the iPhones, but this does not appear to have fixed all of the iPhones' bugs, because many users (including Plaintiffs) are still reporting widespread issues with reception and launching applications.  The *InformationWeek* article notes that the extent of the iPhone problems may have even caught the eye of Apple's Chief Executive Officer, Steve Jobs.  The article recounts a report from the *Apple Insider*, where a reader received a personal e-mail from Mr. Jobs regarding a bug that locks users out of their third-party applications.  Mr. Jobs commented: "This is a known iPhone bug that is being fixed in the next software update in September."

22.     The firmware updates, however, did not resolve the problems experienced by users (including Plaintiffs).

23.     On or about September 15, 2008, Apple released version 2.1 of OS X iPhone software, but again appears not to have cured the numerous problems that iPhone users, such as Plaintiffs, have been and continue to experience with their iPhones.

24.     Despite the fact that Plaintiffs and the Class have experienced widespread and systemic problems concerning the iPhones proper operation on the 3G network, AT&T spokesman Mark Siegel was quoted in an August 20, 2008 article published by *ABCNews.com*, as saying: "[o]verall, the iPhone 3G is working great on our 3G network.  Customer response has been tremendous.  We couldn't be more thrilled with the results…"  This is simply not the case.

25.     Upon information and belief, Defendants knew or should have known that the iPhones would not function properly, as advertised and marketed, on the 3G network.  In fact, as recent as August 2008, Apple was forced to remove misleading advertising in the United Kingdom regarding the iPhones' ability to access "all parts of the Internet."  The United Kingdom's Advertising Standards Authority ("ASA") banned an iPhone advertisement because

the Agency said that the claim that the iPhone can access "all parts of the Internet" was misleading due to the lack of Java and Flash support. According to an August 27, 2008 article appearing in *InformationWeek*, "two viewers complained that the ads were misleading because the handset does not have Flash or Java support, which are integral to popular sites like YouTube." The ASA concluded that because the browser's technical limitations weren't explained the "ad gave a misleading impression of the Internet capability of the iPhone."

### The iPhones' Defective Housing

26.     The iPhones' housing contains hairline cracks.

27.     Apple has made express warranties concerning the quality of the iPhones.

28.     A growing number of the iPhones' users have reported the formation of hairline cracks in the iPhones' housing.

29.     Upon information and belief, Apple knew or should have known that the housing installed on the iPhones were defective to the extent that the housing was too weak to hold up to normal or regular use.

30.     Apple failed to provide Plaintiffs and members of the Class with a quality, reliable and/or durable product.

31.     Although Apple was and is aware that the iPhones were and are defective, and that consumers have experienced repeated instances of cracked housing, Apple has nevertheless allowed the defectively designed iPhones to be sold to the public.

### Allegations Specific to Plaintiffs

32.     Plaintiffs William French, Karen Michaels, Lorna Harris, and Alyce R. Payne and each purchased an iPhone and signed a Service Plan with AT&T in 2008.

33.    Plaintiffs were consistently bumped off of the 3G network to the slower EDGE network.

34.    Plaintiffs installed each of the recommended firmware upgrades as suggested by Defendants.  Plaintiffs' iPhone's 3G network service has not been improved despite Defendants' claims to the contrary, and in fact, such service has continued to deteriorate and the iPhone has ceased to operate as advertised and as specified by Defendants.

***Defendants' Conduct Toward Plaintiffs as Representative of Conduct Toward the Class***

35.    Plaintiffs and members of the Class relied upon the way Defendants represented the speed and performance on the 3G network, as well as the quality of the iPhones.

***Defendants' Conduct Toward Plaintiffs Concerning the iPhones and the Overloaded 3G Network is Representative of Conduct Toward the Class***

36.    Customer complaints displayed on the internet identify a sampling of consumers who complained of the limited and deteriorating functionality of their iPhones on the 3G network.  Such complaints include the following:

> ***I work in Midtown Manhattan, probably the most 3-G covered area, and indeed I get five full glorious bars of broadband goodness at my desk – for two minutes… Then iPhone switches to EDGE, still full bars mind you, and back to 3-G for a hot second.  All day.***  Apart from draining my battery, this makes me type this very e-mail on EDGE when I just racked up 550 bucks for the phone (since I was not eligible for an upgrade.[1]

[Emphasis added.]

*        *        *

Brad Mays is lying through his teeth.  There's nothing wrong with the 3G iPhone.  ***I have a brand new one, and my home is inside an AT&T 3G coverage map (suburban area) and I NEVER get 3G reception.  The iPhone flickers "3G" for***

---

[1] Posted July 23, 2008 on W*ired.com's Gadget Lab* blog, (http://blog.wired.com/gadgets/2008/07/iphone-3g-users.html).

*a second or two and then it's Edge all the way.  AT&T's false advertising of 3G coverage should be the basis of a class action lawsuit.*[2]

[Emphasis added.]

37.     Furthermore, there have been postings by customers on the Internet that, like Plaintiffs, have installed the new iPhone firmware, as recommended by Defendants, and have not had the iPhones' problems fixed.  In fact, it appears that, like Plaintiffs, the iPhones' "bugs" have gotten worse with the upgrades.  As Eric Zeman, a tech blogger, stated on his blog:

> Late yesterday, Apple pushed out a second update for the iPhone's firmware.  The new version, 2.0.2, offers more of Apple's famous (and nebulous) "bug fixes."  ***I am sad to report, after downloading and installing it, my iPhone's bugs have not been fixed.***
>
> ***This morning I am sitting in midtown Manhattan.  A Nokia (NYSE: NOK) E71 I have with me has full signal strength for AT&T (NYSE: T)'s 3G network.  My iPhone can't seem to find the 3G network and is connected to AT&T's slower EDGE network instead (yes, I have the 3G enabled).  That's one major bug not fixed.  And to boot, EDGE speeds seem to be much slower than on the first-generation iPhone I had (this has been consistent since I bought it).  E-mail is taking forever to sync.***
>
> Last night, after updating, I attempted yet again to connect to my home Wi-Fi network, which I have WPA protected.  The iPhone couldn't do it.  It has refused to connect to secure Wi-Fi hotspots since I purchased it.  It will only connect to unsecured networks, which doesn't do me much good.
>
> There does appear to be less lag with the keyboard, but the iPhone still crashes out of some applications, especially Mail and Safari.
>
> ***I don't know what bugs were actually purported to be fixed with this firmware update, but the bugs I am experiencing were not.***[3]

[Emphasis added.]

***Apple's Conduct Toward Plaintiffs Concerning the iPhones' Defective Housing is Representative of Conduct Toward the Class***

---

[2] *Id.*
[3] Posted August 19, 2008 on *Over the Air: InformationWeek's Mobile Weblog*, (http://informationweek.com/blog/main/archives/2008/08/iphone_firmware_2.html).

38. Customer complaints displayed on the internet identify a sampling of consumers who complained of the formation of hairline cracks, like Plaintiffs, in the iPhones' housing. Such complaints include the following:

> In what appears to be an increasingly common problem, hairline cracks are beginning to form on Apple's new iPhone 3G.[4]
>
> *        *        *
>
> I should've stuck to my old iPhone, the one with the aluminum back that probably wont crack. I've never doubted the build quality of Apple products before but now I'm beginning to question it heavily.[5]
>
> *        *        *
>
> ….The iPhone undoubtedly deserves to be scrutinised in tech blogs, and since its main feature is its cosmetic apperance, these aren't really 'minor' flaws.
>
> As for other products having 'minor' flaws, I don't think I've ever had a piece of gadgetry display such cracks...despite spending countless hours in a harsh environment…, none of my mobile phones has ever suffered anything more than light wear on the finish and a few dents…[6]

39. Furthermore, customer complaints on the Internet also report that hairline cracks were discovered upon customers opening their new iPhones' boxes before customers have even handled their iPhones for the first time. Such complaints include the following:

> ***I recall someone spotting cracks on their white iPhone the moment he took it out of the box at home.*** When he went back to the store they accused him of dropping it and wouldn't exchange it or something.[7]

---

[4] Posted by Thomas Ricker on July 30, 2008 on Engadget.com, (http://www.engadget.com/2008/07/30/are-iphone-3gs-cracking).

[5] Posted by Asher Madan on July 30, 2008 on Engadget.com, (http://www.engadget.com/2008/07/30/are-iphone-3gs-cracking).

[6] Posted by "j_g_puff" on July 30, 2008 on Engadget.com, (http://www.engadget.com/2008/07/30/are-iphone-3gs-cracking).

[7] Posted by "TimothyB" on July 18, 2008 on MacRumors.com Forum, (http://forums.macrumors.com/showthread.php?t=525177).

[Emphasis added.]

40.     Moreover, there have been postings by customers on the Internet who have aired their grievances through Apple's own discussion groups and instead of receiving a response concerning the hairline cracks from Apple, Apple allegedly removed the discussion threads from its website.  According to an August 4, 2008 article by Christian Ziberg and posted by *TGDaily*, "***several users report that Apple deleted their posts about the [hairline crack] issue from the Apple Discussion website.***"  (Emphasis added).  In fact a simple search on Apple's Discussion website revealed complaints of the same nature:

> I have been reading a lot of posting[s] indicating cracks in the iPhone 3G plastic housing.  I have multiple hairline cracks around my camera and near the volume rocker.
>
> ***For some reason the thread here (Apple Discussions) has disappeared???***  So I opened a new one.  Apple must do something about this.[8]

[Emphasis added.]

## CLASS ACTION ALLEGATIONS

41.     This action is brought as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.  Plaintiffs bring this action both in their individual capacity and as a class action against Defendants on behalf of themselves and the Class, which consists of all Texas residents who purchased defective 3G iPhones designed, marketed, manufactured, distributed, and sold by Defendants.  Excluded from the Class are Defendants, including any entity in which Defendants have a controlling interest, or which is a parent or subsidiary of, or which is controlled by Defendants, and the officers, directors, affiliates, legal representatives, heirs, predecessors, successors, or assigns of Defendants.

---

[8] Posted by "runkelb" on August 1, 2008 on the Apple Discussion forum – Topic: iPhone 3G – Cracks in Plastic Housing, (http://discussions.apple.com/thread.jspa?threadID=1642767&tstart=0).

42.     The members of the Class ("Class Members") are so numerous that joinder of all members is impracticable.  While the exact number of Class Members is unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, Plaintiffs believe that there are thousands of members of the proposed Class.

43.     Common questions of law and fact exist as to all Class Members and predominate over any questions which affect only individual Class Members.  These common questions of law and fact include:

(a)     Whether Defendants engaged in false and misleading advertising concerning the speed and performance of the iPhones;

(b)     Whether Defendants engaged in false and misleading advertising concerning the speed and performance of the 3G network;

(c)     Whether Defendants knowingly concealed the defective design of the iPhones;

(d)     Whether Apple knowingly concealed the defective design of the iPhones' housing;

(e)     Whether Apple knew that the iPhones' housing was prone to the formation of hairline cracks;

(f)     Whether Defendants' business practices violate Texas law for which Plaintiffs and Class Members may recover damages;

(g)     Whether Plaintiffs and Class Members are entitled to statutory relief;

(h)     Whether Plaintiffs and Class Members are entitled to punitive relief;

(i)     Whether Plaintiffs and Class Members are entitled to compensatory relief; and

(j)      Whether Plaintiffs and Class Members have sustained damages, and, if so, what is the proper measure of those damages.

44.      Plaintiffs' claims are typical of the claims of Class Members as they and each Class Member sustained, and continue to sustain, damages arising from Defendants' wrongdoing.  Plaintiffs' damages, as well as the damages of each Class Member, were caused by Defendants' wrongful conduct, as alleged herein.

45.      Plaintiffs will fairly and adequately protect the interests of those Class Members they seek to represent and have no interests that are antagonistic to the interests of any other Class Member.  Plaintiffs have retained counsel who have experience and success in complex litigation.

46.      A class action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all the individual Class Members is impracticable.  Furthermore, because the damages suffered, and continue to be suffered, by each individual Class Member may be relatively small, the expense and burden of individual litigation would make it very difficult or impossible for individual Class Members to redress the wrongs done to each of them individually and the burden imposed on the judicial system would be enormous.

47.      In addition, the prosecution of separate actions by the individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendants.  In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

## FIRST CAUSE OF ACTION

### Breach of Express Warranty

48.     Plaintiffs repeat and re-allege the allegations contained in all preceding paragraphs as if fully set forth herein.

49.     Starting in or about the summer of 2008, Defendants represented, in writing and otherwise, that the compatibility and quality of the 3G network protocol or standard included in the iPhones would be twice as fast as prior models.   Those representations, promises and assurances became part of the basis of the bargain between Apple and Plaintiffs (and the Class) and thereby constituted an express warranty.

50.     Defendants then sold the iPhones to Plaintiffs and members of the Class and, in turn, Plaintiffs and members of the Class, purchased Apple's product, the iPhone.

51.     Apple, however, breached the express warranty in that the iPhones were inherently defective and would not provide the functionality expected by consumers and/or would not last as long as reasonably expected by consumers.  As a result of the stated breach, Plaintiffs and the members of the Class did not, in fact, receive goods as warranted by Apple.

52.     As a direct or proximate result of this breach of warranty by Apple, Plaintiffs and the Class have been damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### Breach of Implied Warranty of Fitness of Purpose

53.     Plaintiffs repeat and re-allege the allegations contained in all preceding paragraphs as if fully set forth herein.

54.     Starting in 2008, Plaintiffs and members of the Class sought to purchase iPhones with all the features and qualities that Apple claimed were maintained by the iPhones, including

the iPhones' casing. Plaintiffs and the Class relied on Apple's industry reputation, skill, expertise and judgment to furnish a suitable product for the stated purpose.

55.     When Apple sold the iPhone – directly or indirectly – to Plaintiffs and members of the Class, Plaintiffs and the Class bought these goods from Apple in reliance on Apple's industry reputation, skill, expertise and judgment.

56.     At the time of manufacturing, advertising and/or sale, Apple knew or had reason to know the particular purpose for which the goods were required or would be used. Apple knew that Plaintiffs and members of the Class were relying on Apple's industry reputation, skill, expertise and judgment to manufacture and furnish a suitable digital camera, thereby creating and confirming an implied warranty that the products or goods – the iPhones – were fit for their stated and advertised purpose.

57.     Apple, however, breached the implied warranty.

58.     Plaintiffs and members of the Class did not receive suitable products or goods in the form of the iPhone. The iPhones were not fit for the particular purpose for which they were sought, purchased and required in that it did not have the features, quality or durability represented by Apple.

59.     As a direct or proximate result of this breach of implied warranty by Apple, Plaintiffs and the Class have been damaged in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
#### Unjust Enrichment

60.     Plaintiffs repeat and re-allege the allegations contained in all preceding paragraphs as if fully set forth herein.

61.     By means of their material misconduct, as set forth above, Defendants induced Plaintiffs and Class Members to pay for the iPhones and their associated Service Plans. As a

consequence of such misconduct, Plaintiffs and Class Members were forced to incur costs they would not have otherwise been willing to pay absent the misrepresentations and misconduct by Defendants.

62.     By virtue of the foregoing, Defendants have been unjustly enriched in an amount yet to be determined with respect to Plaintiffs and Class Members to the extent that Defendants received and kept revenues collected from the iPhones designed, marketed, manufactured, distributed, and sold by Defendants, which they would not have received absent their improper conduct.

## FOURTH CAUSE OF ACTION

### Negligent Misrepresentation

63.     Plaintiffs repeat and re-allege the allegations contained in all preceding paragraphs as if fully set forth herein.

64.     Starting in 2008, Defendants misrepresented to Plaintiffs and the Class the quality of the iPhones.

65.     Starting in or about the summer of 2008, Defendants omitted material facts regarding the quality of the iPhones.

66.     Starting in or about the summer of 2008, Defendant misrepresented to Plaintiffs and the Class the quality and compatibility of the 3G network protocol or standard included in the iPhones.

67.     Starting in or about the summer of 2008, Defendant omitted material facts regarding the quality of the iPhones' housing.

68.     Defendants owed a duty to Plaintiffs and the Class to exercise reasonable care when issuing statements or disclosures regarding the nature of the iPhones.

69.     Upon information and belief, the statements or disclosures regarding the quality or durability of the iPhones were likely to deceive or confuse Plaintiffs and members of the Class.

70.     The referenced claims have also influenced or are likely to influence future decisions of consumers and the buying public.  Plaintiffs and the Class, by purchasing the iPhones, reasonably acted in reliance upon the truth of the representations made by Defendants.

71.     As a direct and proximate result of the Plaintiffs' and the Class' reliance upon the representation made by Defendants, as described above, Plaintiffs and the Class have sustained damages and ascertainable loss.

## FIFTH CAUSE OF ACTION

### Intentional Misrepresentation

72.     Plaintiffs repeat and re-allege the allegations contained in all preceding paragraphs as if fully set forth herein.

73.     Starting in 2008, Defendants represented to the public, including Plaintiffs and the Class, that iPhones were durable and created with quality.

74.     Defendant's representations were false and misleading.

75.     At the time Defendant made statements or representations regarding the quality and compatibility of the 3G network protocol or standard included in the iPhones, Defendants knew that the statements or representations were false.

76.     Defendants made the misrepresentations alleged herein with the intention of inducing and persuading Plaintiffs and the Class to purchase the iPhones.

77.     Defendants knew that the iPhones were defective and that the product would fail.

78.     Defendants became further aware of the defective nature of the iPhones through numerous customer complaints of the product's failure, both during and after the warranty period.

79.     Plaintiffs and members of the Class, by purchasing the iPhones, relied on Defendants' false representations.

80.     As a direct or proximate result of Defendants' intentional misrepresentations, Plaintiffs and members of the Class were induced to pay for the iPhones.

81.     Plaintiffs and members of the Class were damaged through their purchase and use of the iPhones.

82.     Plaintiffs' and the Class' reliance on Defendants' statements and representations of the nature, quality and durability of the iPhones was reasonable.

83.     Based upon the allegations stated herein, Defendants were and are guilty of malice, oppression, and fraud, and Plaintiffs and the Class are thereby entitled to recover exemplary or punitive damages.

## SIXTH CAUSE OF ACTION

### Violation of Texas Business and Commerce Code Sections 17.12 and 17.46 and Other Similar State Statutes

84.     Plaintiffs repeat and re-allege the allegations contained in all preceding paragraphs as if fully set forth herein.

85.     Defendants engaged in false and misleading advertising concerning the speed and performance of the iPhones.

86.     As fully alleged above, by advertising, marketing, distribution, and/or selling the iPhones to Plaintiffs and Class Members, Defendants engaged in, and continue to engage in, deceptive acts and practices.

87. In connection with the Service Plan fees charged by AT&T to Plaintiffs and other Class Members, Defendants materially mislead Plaintiffs and Class Members and Defendants' acts and practices were improper.

88. Plaintiffs and the members of the Class further seek to enjoin such unlawful deceptive acts and practices as described above. Each of the Class members will be irreparably harmed unless the unlawful actions of Defendants are enjoined in that Apple and AT&T will continue to falsely and misleadingly advertise with respect to the speed and performance of the iPhones. Towards that end, Plaintiffs and the Class request an order granting them injunctive relief as follows: order disclosures and/or disclaimers on the outside of the iPhone boxes or advertising material prior to making any electronics device purchase. Absent injunctive relief, Defendants will continue to market, distribute, and sell iPhones to the detriment of its customers. Plaintiffs have not previously asked for such injunctive relief.

89. In this regard, Defendants have violated, and continue to violate, Texas law, which makes deceptive acts and practices unlawful.

90. As a direct and proximate result of Defendants' violation of Texas law, as described above, Plaintiffs and Class Members have been injured and have suffered damages, in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION
### Restitution

91. Plaintiffs repeat and re-allege the allegations contained in all preceding paragraphs as if fully set forth herein.

92. By virtue of deceptive and unlawful business practices, Defendants charged and received payment for the iPhones that they designed, marketed, manufactured, distributed, and sold. Defendants should not be permitted to retain those payments in equity and good

conscience, as those payments were obtained in contravention of law. To permit Defendants to retain those payments would wrongfully confer a benefit upon Defendants.

93.     Under the circumstances, it would be inequitable for Defendants to retain these benefits.

**EIGHTH CAUSE OF ACTION**

**Breach of Contract**

94.     Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein.

95.     In connection with the relationship between Defendants and Plaintiffs and the Class Members, Defendants assumed duties and contractual obligations, express and/or implied, to provide 3G network service to the iPhones.

96.     Defendants communicated their contractual obligations (and all terms and conditions of the same) to Plaintiffs and the members of the Class through various sources, including AT&T's Service Plan.

97.     As a direct and proximate result of Defendants' improper or wrongful activities, Plaintiffs and the Class Members suffered damages and are entitled to damages in an amount to be proven at trial (or have been irreparably harmed by Defendants' conduct).

98.     Plaintiffs and members of the Class have fulfilled all conditions precedent with respect to the applicable contractual obligations or in relation to this action, or, in the alternative, the conditions precedent have otherwise been waived.

WHEREFORE, Plaintiffs demand judgment against Defendants for themselves and Class Members, as follows:

A.     An Order determining that the action is a proper class action, maintainable under Rule 23, and certifying Plaintiffs as representatives of the Class;

B.     An Order awarding statutory, compensatory and punitive damages in favor of Plaintiffs and the other Class Members against Defendants for Defendants' violation of the Texas law, and for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.     An Order declaring the Defendants' practices to be unlawful, improper, unfair, and/or deceptive and requiring Defendants to refund the proceeds from the fees to Plaintiffs and Class Members;

D.     An Order awarding Plaintiffs and Class Members their actual damages for the wrongful acts complained of, along with pre-judgment and post-judgment interest;

E.     A temporary, preliminary or permanent injunction enjoining Defendants from continuing to disseminate false and misleading advertising concerning the speed and performance of the iPhones and the 3G network;

F.     Disgorgement and restitution of any ill-gotten gains that Defendants obtained through their dissemination of false and misleading statements regarding the iPhones;

G.     An Order awarding Plaintiffs and Class Members their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

H.     Such other and further relief as the Court may deem just and proper; and

I.     Any other and further relief to which they may be entitled at law or in equity.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury.

Dated:  January 29, 2009            **CLAXTON & HILL, PLLC**

                                     By: *Roger F. Claxton*
                                    Roger F. Claxton
                                    State Bar No. 04329000
                                    10000 N. Central Expressway,
                                    Suite 725
                                    Dallas, Texas 75231
                                    214-969-9029
                                    Fax: 214-953-0583

                                    *Attorneys for Plaintiff*

**OF COUNSEL:**

**FARUQI & FARUQI LLP**
Nadeem Faruqi
369 Lexington Avenue, 10th Floor
New York, New York 10017
212-983-9330
Fax:  212-983-9331